YELVERTON, Judge.
Brenda Tarver, a licensed real estate salesperson, sued Dianne Landers, a real estate broker, for her alleged share of the real estate commission that had been paid Landers as a result of the completed sale of a house. From a judgment in favor of plaintiff, Tarver, Landers appealed. We affirm.
Some basic facts are undisputed. Lan-ders’ brokerage agency contracts with various licensed real estate salespersons to act as her selling agents. These selling agents are treated as independent contractors, and work on a commission basis. The selling agents receive 30% of Landers’ commission on completed sales. Tarver was a sales associate for the defendant’s agency from August 1982 to April 1984. In December 1982 she entered into a written contract with Landers whereby they agreed that Tarver would “receive compensation based on gross commissions received by Dianne S. Landers, Real Estate Broker, for only those sales which I am entitled as either listing and/or selling agent.”
Negotiations leading to the sale out of which this suit arose began in April 1984. Landers’ agency was employed by Reginald Lowery under an exclusive listing agreement to market and negotiate the sale of some property that Lowery owned. An advertisement of the property was placed in the local newspaper. In response to the advertisement, Charles Smith and his wife contacted the agency expressing interest. The Smiths were referred to Tarver. Tar-ver showed the property to the Smiths and on April 3, 1984, the Smiths made an offer to purchase it. The offer was the payment of $25,000.00 cash and the conveyance of ownership of a house and lot then being occupied by the Smiths’ daughter and son-in-law. Lowery rejected this offer but made a counteroffer on April 4, 1984, to sell his property for $32,000.00 cash and the Smith property. Tarver took this counteroffer to the Smiths who turned it down.
On April 5, 1984, the Smiths went to the agency office to talk some more. Landers negotiated with the Smiths at this meeting, which was held while Mrs. Tarver was out of the office closing another sale. At this meeting and during these negotiations, after the Smiths made a few minor changes from the prior offer, they reached an agreement: the Smiths would pay Lowery $32,000, and throw in their house and lot; Lowery would pay the expenses of the sale of his property, and let the Smiths’ daughter and son-in-law stay on as renters in the Smiths’ former house.
*296 Conveyances pursuant to this agreement were finalized on April 19. Tarver was not present. Tarver’s signature as the selling agent, however, appears on all three written offers and counteroffers. Landers received her commission as broker from Lowery but subsequently refused to pay Tarver a commission. After a trial the district court found that the evidence supported a determination that Tarver was entitled to her commission and rendered judgment accordingly.
The only issue on appeal is whether the trial court erred in finding that the plaintiff was the selling agent of the Lowery sale and therefore entitled to a commission under her contract with the defendant.
Landers, the defendant, testified that the person who negotiated an acceptable purchase agreement was the selling agent, and that in order to receive a commission the agent must secure a bona fide contract of purchase acceptable to the seller and attend the closing of the sale. She testified that she told Tarver on April 20, 1984, that she would not receive a commission on the Lowery sale, because she had not obtained an acceptable purchase offer. She further testified Tarver signed the final purchase agreement as agent without her knowledge.
This testimony was disputed by Tarver and another former sales associate of the agency. Tarver testified that it was common practice within the office for another agent to handle negotiations when the selling agent who had handled the initial negotiations was absent from the office. She testified that it was the practice in such a situation that the initial selling agent would be paid the commission. Tarver said that she signed the April 5 purchase agreement when she returned to the office on that date, and that the agreement had been placed on her desk. She testified that on that date Landers also gave her a list of things to do concerning the agreement. Tarver testified that she completed these tasks. She declared that on April 19, the day the sale was closed, Landers told her that she would mail her her commission on the Lowery sale. Later, according to Tar-ver, Landers informed her that she had no intention of paying her a commission.
Sue Cross, another former sales associate of the defendant, testified for Tarver. She said there were no strict guidelines to follow in order to earn a commission. It was not mandatory to attend the closing to obtain the commission. The practice within the office was that the agent who demonstrated the property would be entitled to the commission as the selling agent, even if another agent worked out the deal while the other agent was out of the office. She corroborated Tarver in other ways as well, testifying that Landers indicated to her that Tarver would get a commission for the Lowery sale.
Tarver was unquestionably the selling agent during the initial negotiations between Lowery and the Smiths. She secured two purchase agreement offers. She demonstrated the property to the prospective purchasers. The last offer which she secured from the actual purchasers contained substantially the same provisions as the final purchase agreement. The purchasers testified that they were ready to close the deal with but a few changes. This is why they went to the agency office on April 5. Landers penciled in the changes and the purchase agreement was finalized. The changes consisted only of a provision that the seller pay the legal expenses of the sale of his property, and an agreement that the Smiths’ daughter and son-in-law could rent the former Smith property until Lowery could sell it. At the time of the April 5 meeting the plaintiff was out of the office closing another sale.
Appellant argued that Tarver was not the “procuring cause,” and was therefore not entitled to share in the fee. According to their contract, Tarver was to get a share of the commission paid only for those sales where she was “either listing and/or selling agent.” The dispute here is over what Tarver had to do to be the listing agent, or the selling agent, or both, and thereby earn a share of the fee. The evidence in the record does not indicate that these terms *297 have any particular technical connotations which would require us to look beyond their plain meaning and understood use as between the contracting parties. If Lan-ders intended that her agents be the “procuring cause” of the ultimate sale, such a provision could have been included in the employment contract. As such a provision was not included, it was not pertinent to the finding that Tarver was the selling agent.
The determination of whether Tarver earned her commission under the contract is a factual determination which will not be disturbed on appeal in the absence of manifest error. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The evidence supports a finding that the common practice of defendant’s real estate agency was to pay the commission to the initial selling agent who demonstrated the property, even though another agent finalized the purchase agreement, in situations where the selling agent was out of the office during the final negotiations. Under these facts we find no manifest error in the trial court’s determination that the plaintiff was entitled to her commission.
The judgment is affirmed at appellant’s cost.
AFFIRMED.